# CASE NO. 17-3111

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA       PLAINTIFF-APPELLEE

VS.

JOHNATHAN HOLT       DEFENDANT-APPELLANT

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION
### CASE NO. 2:14-cr-00127-19

---

## BRIEF OF APPELLANT

---

STEVEN R. JAEGER (KBA 35451)
THE JAEGER FIRM PLLC
23 Erlanger Road
Erlanger, Kentucky 41018
TELE: (859) 342-4500
EMAIL: srjaeger@thejaegerfirm.com

*Counsel for Appellant - Defendant*

CASE NO.  17-3111

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA                    PLAINTIFF-APPELLEE

VS.

JOHNATHAN HOLT                              DEFENDANT-APPELLANT

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION
CASE NO. 2:14-cr-00127-19

*DISCLOSURE OF CORPORATE AFFILIATION*
*AND FINANCIAL INTEREST*

Pursuant to 6th Circuit Rule 26.01, Appellant, Johnathan Holt, makes the following disclosures:

1. Is said party a subsidiary or affiliate of a publicly owned corporation?

ANSWER: NO.

2.  Is there a publicly-owned corporation, not a party to the appeal, which has a financial interest in the outcome?

ANSWER: NO.

s/ *Steven R. Jaeger*                        Dated: November 13, 2017
STEVEN R. JAEGER

# **TABLE OF CONTENTS**

<u>Page</u>

DISCLOSURE OF CORPORATE AFFILIATION
AND FINANCIAL INTEREST ................................................................. i

TABLE OF CONTENTS................................................................ ii-v

TABLE OF AUTHORITIES ........................................................ vi-ix

STATEMENT REGARDING ORAL ARGUMENT ................................. 1

JURISDICTIONAL STATEMENT ............................................... 2

STATEMENT OF THE ISSUES................................................... 2

**I.   WHETHER THE DISTRICT COURT ERRED
WHEN IT CONCLUDED THAT THE
INTERROGATION OF MR. HOLT WAS NON-
CUSTODIAL, RESULTING IN ITS DENIAL OF HIS
MOTION TO SUPPRESS STATEMENTS MADE TO
LAW ENFORCEMENT AGENTS AND THE
PROSECUTOR. .......................................................... 2**

**II.  WHETHER THE CONVICTION OF JOHNATHAN
HOLT IS SUPPORTED BY SUFFICIENT
EVIDENCE TO PROVE A CRIME OF VIOLENCE
IN AID OF RACKETEERING. ....................................... 2**

STATEMENT OF THE CASE......................................................... 3

1. Course of Proceedings and Disposition in Court Below ................ 3

2. Statement of the Facts................................................... 9

   A. Johnathan Holt's Date of Birth................................... 9

   B. The Short North Posse ............................................. 9

C. Relevant Stipulations............................................................ 10

D. The Murder of Quincy Battle ................................................ 11

E. The Interrogation of Johnathan Holt ................................... 13

    1) Subpoena…………………………………............ 13

    2) Circumstances surrounding interrogation…………….... 14

SUMMARY OF ARGUMENTS ................................................... 17

ARGUMENTS .............................................................................. 19

I.    **WHETHER THE DISTRICT COURT ERRED WHEN IT CONCLUDED THAT THE INTERROGATION OF MR. HOLT WAS NON-CUSTODIAL, RESULTING IN ITS DENIAL OF HIS MOTION TO SUPPRESS STATEMENTS MADE TO LAW ENFORCEMENT AGENTS AND THE PROSECUTOR.** ............................................ 19

  A. Standard of Review ........................................................... 19

  B. Argument........................................................................... 19

    **1.** The law ....................................................................... 19

    **2.** Mr. Holt is in custody when his statements are given, and law enforcement is required to give him the full Miranda warnings prior to the planned interrogation. ................................................. 20

      **a)** The Location........................................................... 21

      **b)** The Length and Manner of Questioning. ................ 22

      **c)** Restraint on Individual's Freedom of Movement............................................................... 25

**d)** Whether law enforcements' advice to Holt
that he could leave at any time was
meaningful under the circumstances. ...................... 26

**3.** The statements were taken contrary to the
policies of the Columbus Police Department
requiring recordation of this interrogation.
Affirming this conviction under these facts will
create a dangerous precedent. ...................................... 33

**a)** Preface .................................................. 33

**b)** Contrary to Columbus Police Department
policy, the interview of Mr. Holt is not
recorded because Detective Gillette's
recorder has dead batteries. .................................... 34

**c)** The district court recognizes that the failure
to record the interview in this case creates a
dangerous precedent. ............................................... 37

**4.** Mr. Holt's statements are in response to law
enforcement's interrogation of him. ........................... 38

C.  Conclusion ........................................................ 39

II.  **WHETHER THE CONVICTION OF JOHNATHAN
HOLT IS SUPPORTED BY SUFFICIENT
EVIDENCE TO PROVE A CRIME OF VIOLENCE
IN AID OF RACKETEERING.** ............................................. 39

A.  Standard of Review ........................................... 39

B.  Introduction to Argument.................................... 40

C.  Argument........................................................... 41

**1.** The Law.................................................... 41

**2.**    There is insufficient evidence to show that Mr. Holt was an associate or member of any racketeering enterprise. ................................................    42

**3.**    There is insufficient evidence to prove that the Quincy Battle murder was committed in furtherance of any racketeering enterprise. ................    49

   **a)**    There is no proof that the Battle murder was committed because Mr. Holt was attempting to gain entrance into, or maintain or increase his position in the Short North Posse or any racketeering enterprise. ...........................    49

   **b)**    There is insufficient proof to show that the Battle murder was committed because Mr. Holt was promised payment, expected to pay or received anything of pecuniary value from any racketeering enterprise or from the Short North Posse.................................    50

**D.**    Conclusion.........................................................    51

CONCLUSION ............................................    52

CERTIFICATE OF COMPLIANCE.............................    53

CERTIFICATE OF SERVICE ....................................    53

APPELLANT'S DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ...........................    A-D

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Boyle v. United States,* 556 U.S. 938, 947 (2009) ........................................ 42, 49

*California v. Beheler,* 463 U.S. 1121, 1125 (1983).................................... 22

*Cervantes v. Walker,* 589 F.2d 424, 428 (9th Cir. 1978)........................... 25

*Jackson v. Virginia,* 443 U.S. 307, 319 (1979), ........................................ 40

*Mason v. Mitchell,* 320 F.3d 604, 631-32 (6th Cir. 2003)........................... 22

*Miranda v. Arizona,* 384 U.S. 436, 475 (1966) ......................................... 1, 20-

.............................................................................................. 21, 25,

.............................................................................................. 29, 30,

.............................................................................................. 36

*Oregon v. Mathiason,* 429 U.S. 492, 495 (1977) ...................................... 22

*Rhode Island v. Innis,* 446 U.S. 291, 300 (1980)....................................... 39

*Salinas v. United States,* 522 U.S. 52, 62-63 (1997) ................................. 43

*Stansbury v. California,* 511 U.S. 318, 323 (1994) ................................... 27, 28

*Thompson v. Keohane,* 516 U.S. 99, 112 (1995)....................................... 20

*United States v. Avery,* 128 F.3d 966, 971 (6th Cir. 1997)......................... 41

*United States v. Banks,* 514 F.3d 959, 968 (9th Cir. 2008) ....................... 50

*United States v. Concepcion,* 983 F.2d 369, 392 (2d Cir. 1992). ................ 41

*United States v. Conder,* 529 Fed. Appx. 618, 620-21 (6th Cir. 2013)........ 19,

................................................................................................... 23, 25

*United States v. Corrado,* 227 F.3d 543, 554 (6th Cir. 2000) ..................... 51

*United States v. Geisen,* 612 F.3d 471, 489 (6th Cir. 2010)........................ 40

*United States v. Graham,* 622 F.3d 445, 448 (6th Cir. 2010)...................... 40

*United States v. Hackett,* 762 F.3d 493, 500 (6th Cir. 2014)...................... 50

*United States v. Hinojosa,* 606 F.3d 875 (6th Cir. 2010) ........................... 21

*United States v. Jones,* 291 F. Supp. 2d 78, 89 (D CT, 2003).................... 52

*United States v. Mahan,* 190 F.3d 416, 420-22 (6th Cir. 1999) ................... 23

*United States v. Morrison,* 220 F. Appx. 389, 395 (6th Cir. 2007)............. 50

*United States v. Panak,* 552 F.3d 462, 465 (6th Cir. 2009)........................ 21

*United States v. Pearce,* 912 F.2d 159, 162 (6th Cir. 1990)........................ 42

*United States v. Protsman,* 74 Fed. Appx. 529, 534-36 (6th Cir. 2003) ...... 26

*United States v. Ray,* 803 F.3d 244, 265 (6th Cir. 2015)............................ 19

*United States v. Salgado,* 250 F.3d 438,447 (6th Cir. 2001)...................... 41

*United States v. Salvo,* 133 F.3d 943, 951 (6th Cir. 1998) .......................... 22

*United States v. Swanson,* 341 F.3d 524, 528 (6th Cir. 2003)..................... 19, 26

*United States v. Taylor,* 800 F.3d 701, 711 (6th Cir. 2015) ........................ 40

*United States v. Tocco,* 200 F.3d 401, 424 (6th Cir. 2000........................... 51

*United States v. Turkette,* 452 U.S. 576, 583 (1981) .................................. 42

*United States v. Williams,* 224 F.3d 530, 532 (6th Cir. 2000)..................... 19

*Yarborough v. Alvarado,* 541 U.S. 652, 667 (2004)....................................  20

## **STATUTES**

18 U.S.C. § 2 ................................................................................  4

18 U.S.C. § 924(c) ........................................................................  4

18 U.S.C. § 924(c)(1)(A)(iii) ........................................................  4

18 U.S.C. § 924(j)(1) ....................................................................  4

18 U.S.C. § 1959(a)(1) .................................................................  4, 41

18 U.S.C. § 1961(4) .....................................................................  10, 42

21 U.S.C. § 841(a)(1).....................................................................  4

21 U.S.C. § 841(b)(1)(C) ..............................................................  4

21 U.S.C. § 846..............................................................................  4

28 U.S.C. § 1291............................................................................  2

## **CONSTITUTIONAL PROVISIONS**

Fifth Amendment ..........................................................................  5, 20

## **RULES**

Federal Rule of Appellate Procedure 4(b) .....................................  2

Federal Rule of Appellate Procedure 32(a)(7)(B)(i) .....................  53

Federal Rule of Criminal Procedure 29 .........................................  7, 47, 52

Federal Rule of Criminal Procedure 29(a) ....................................  40

Sixth Circuit Rule 30(b) .................................................................    A

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant, Johnathan Holt, respectfully requests oral argument on this appeal.

Mr. Holt is sentenced to life imprisonment upon his conviction for murder in aid of racketeering. He is also sentenced to a consecutive term of twenty-five years for the conviction of murder through the use of a firearm during and in relation to a drug trafficking crime. Those convictions are based, in part, on statements secured from him during a non-recorded interrogation conducted by law enforcement pursuant to a pre-devised plan. His motion to suppress those statements is denied by the district court when it decides that the interrogation was non-custodial and, thus, the *Miranda* protections did not apply. This case involves important issues surrounding that interrogation.

There are also sufficiency of the evidence issues concerning proof of Mr. Holt's connection as an "associate" to a charged racketeering enterprise. The case also presents questions about whether Mr. Holt's conduct is sufficient to show his acts were in aid of racketeering making those acts federal, rather than state crimes.

Oral argument will bring clarity to the issues briefed and aid the Court in understanding the arguments presented.

## JURISDICTIONAL STATEMENT

Appellant, Johnathan Holt, appeals from a Final Judgment in a criminal case entered on January 27, 2017, by the United States District Court for the Southern District of Ohio, Eastern Division, in Case Number 2:14-cr-00127-19. (R. 1413: Judgment in a Criminal Case, Page ID## 14397-14402). Fed. R. App. P. 4(b) and 28 U.S.C. §1291 grant to the United States Court of Appeals jurisdiction from all final judgments of the United States District Courts. The Notice of Appeal from final judgment is timely filed on February 02, 2017. (R. 1417: Notice of Appeal, Page ID# 14433). Jurisdiction properly rests in the Sixth Circuit Court of Appeals.

## STATEMENT OF THE ISSUES

**I. WHETHER THE DISTRICT COURT ERRED WHEN IT CONCLUDED THAT THE INTERROGATION OF MR. HOLT WAS NON-CUSTODIAL, RESULTING IN ITS DENIAL OF HIS MOTION TO SUPPRESS STATEMENTS MADE TO LAW ENFORCEMENT AGENTS AND THE PROSECUTOR.**

**II. WHETHER THE CONVICTION OF JOHNATHAN HOLT IS SUPPORTED BY SUFFICIENT EVIDENCE TO PROVE A CRIME OF VIOLENCE IN AID OF RACKETEERING.**

## STATEMENT OF THE CASE

### 1.    Course of Proceedings and Disposition in Court Below

The Short North Posse is an alleged criminal enterprise operating in or near Columbus, Ohio, from 2005 until 2014.  The original twenty-five count indictment is issued by a grand jury in the Southern District of Ohio, Eastern Division, on June 23, 2014.  Seventeen defendants are charged with multiple offenses, including RICO conspiracy in which the Short North Posse enterprise committed murder, attempted murder and robbery, distribution and possession with intent to distribute controlled substances, witness tampering, and acts of extortion, robbery and retaliation against witnesses.  The first indictment also charges eleven counts of murder in aid of racketeering, murder through the use of a firearm during and in relation to an act of violence, four counts of murder through use of a firearm in relation to drug trafficking, conspiracy to murder a witness, use of a firearm during and in relation to a crime of violence, four counts of being a felon in possession of a firearm, possession with intent to distribute cocaine, and possession with intent to distribute heroin. (R.14: Indictment, Page ID# 104-83).  Johnathan Holt is not charged in this first indictment.

The Southern District of Ohio grand jury returns a superseding indictment on October 20, 2014. (R. 300: Superseding Indictment, Page ID## 1150 -1243). The thirty-eight count superseding indictment charges multiple additional offenses,

and adds three new defendants, including Johnathan Holt, who is charged in four counts.  The charges against him are as follows:

- Count 17 – Attempted Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846.  (Id., Page ID# 1204);

- Count 18 – Use of a Firearm During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 18 U.S.C. § 2. (Id., Page ID# 1204);

- Count 19 –Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 2. (Id., Page ID# 1205); and

- Count 20 – Murder Through the Use of a Firearm During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. §§ 924(c), 924(j)(1), and 18 U.S.C §2. (Id., Page ID## 1205-06).

On April 02, 2015, another indictment is returned against some of the same defendants, but is assigned district court case number 2:15-cr-0080.  This indictment names four defendants who are also named in the superseding indictment.  The cases are consolidated, and the prosecution proceeds under case number 2:14-cr-0127. (R.595: Order, Page ID# 2470-474).

Johnathan Holt files a motion to dismiss counts 17 through 20. The motion, filed December 30, 2014, is premised on a violation of Mr. Holt's due process

4

rights to a fair trial. (R.435: Motion to Dismiss Indictment, Page ID## 1723-727).

Mr. Holt contemporaneously files a motion for severance and relief from

prejudicial joinder. (R.436: Motion for Severance and Relief from Prejudicial

Joinder, Page ID## 1728-731).  The Government seeks denial of both motions in

its responses filed on January 12, 2015 (R.468: Response to Motion for Severance,

Page ID## 1816-821), and on January 14, 2015 (R.472: Response to Motion to

Dismiss Indictment, Page ID## 1835-1840).

Mr. Holt also moves the district court for suppression of his statements made

to law enforcement agents, premised on a violation of Mr. Holt's Fifth Amendment

rights. His motion, addressing the interrogation of Mr. Holt on August 28, 2014, is

filed on June 18, 2015. (R.612: Motion to Suppress Oral Statements, Page ID##

2564-2579, including attachments at R.612-1 and R.612-2).  The United States

responds in opposition to the motion, and seeks its denial alleging his statements

were voluntarily made. (R.646: U.S. Opposition to Holt's Motion to Suppress Oral

Statements, Page ID## 2775-783).

The Court denies the motion to dismiss for due process violations on August

12, 2015. (R.682: Opinion and Order, Page ID## 3034-3056). On October 02,

2015, the district court denies the motion to sever. (R.727: Opinion and Order,

Page ID## 3337-3369).

A suppression hearing is held on November 09, 2015. (R.1090: Transcript of Motion to Suppress Oral Statements Proceedings, Page ID## 8731-822). The district court denies Mr. Holt's motion to suppress on November 12, 2015. (R.775: Opinion and Order, Page ID##3575-590). The district court concludes that at the time of the statements, Mr. Holt was not subject to a custodial interrogation (Id., Page ID# 3588), and that a DOJ Policy Memorandum does not support a basis to suppress the statements made. (Id., Page ID# 3590). The motion to suppress is renewed during trial in the course of Columbus Police Department Detective William Gillette's testimony. (R.1521: Transcript of Jury Trial Proceedings, Page ID# 15686). The District Court states that the circumstances surrounding the interview come "… perilously close to amounting to a constitutional violation," but maintains its denial of the motion as stated in the November 12, Order. (Id., Page ID# 15697-98).

The Government ultimately seeks severance of Mr. Holt's trial from the other remaining defendants. (R.1272: Government's Motions for Severance, Page ID# 13742). Mr. Holt has no objection and joins the motion. (R. 1275: Defendant's Response to Government's Motion to Sever, Page ID# 13749). The motion for severance is granted, and Mr. Holt's trial is scheduled to commence on November 28, 2016. (R.1281: Order, Page ID#13760).

The Government moves to dismiss the charges against Mr. Holt contained in Counts Seventeen and Eighteen. (R.1324, Page ID## 13966-967). By Order entered November 18, 2016, the district court dismisses the charge of attempted possession with intent to distribute cocaine (Count 17), and use of a firearm during and in relation to a drug trafficking crime (Count 18). (R.1328: Order, Page ID 13974-975).

Mr. Holt's trial commences on November 28, 2016.  (R.1516 Sealed: Transcript of Jury Trial *Voir Dire* Proceedings, Page ID# 15031).  Trial sessions are held and testimony is taken on November 29, 30, and December 1, 2, and 5. The Government rests on December 05, and the defense argues in favor of a Rule 29 motion for judgment of acquittal. (R.1523: Sealed, Page ID## 15888-897). The United States responds. (Id., Page ID## 15897-899). The motion is overruled. (Id., Page ID# 15900). The defense rests without calling any witnesses. (Id., Page ID# 15920).  Closing arguments are made and jury instructions are given.  Jury deliberations begin. (Id., Page ID# 16043). Deliberations continue on December 06, 07, and 08. (R.1525: Transcript of Jury Trial proceedings, Page ID# 16239).

The jury returns its verdict on December 08, finding Mr. Holt guilty of Count Nineteen (the March 24, 2010, unlawful murder of Quincy Battle as consideration for the receipt of, or as consideration for a promise and agreement to

pay, anything of pecuniary value from the Short North Posse, or for the purpose of gaining entrance to or increasing position in the Short North Posse) and Count 20 (unlawfully murdering Quincy Battle by knowingly using, carrying, or brandishing a firearm which was discharged during and in relation to a drug trafficking crime for which he could be prosecuted in federal court, that is, conspiracy to possess with intent to distribute and conspiracy to distribute marijuana, and in so doing, kicking Quincy Battle with malice aforethought).  (R.1347: Verdict Forms, Page ID##14092 and 14093).

After the filing of sentencing memorandums, a sentencing hearing is held on January 25, 2017. (R.1526: Transcript of Sentencing Proceedings, Page ID# 16264). Mr. Holt is sentenced to a term of life imprisonment without the possibility of parole on Count Nineteen. (Id., Page ID# 16279).  The first sentence announced by the Court on Count Twenty is 50 years, to be served consecutively to Count Nineteen (Id.), but is later corrected to a sentence of 25 years consecutive to Count Nineteen (Id., Page ID# 16281).  Defense counsel renews prior arguments that Mr. Holt was a juvenile when the crime was committed.  The arguments and objections are again overruled. (Id.). Mr. Holt is advised of his appellate rights. (Id.).

The district court enters its Judgment in a Criminal Case on January 27, 2017, imposing the life sentence without parole and a consecutive term of 25 years' imprisonment. (R.1413: Judgment in a Criminal Case, Page ID# 14397-

402). A timely Notice of Appeal is filed February 02, 2017. (R.1417, Page ID#
14433-434).

### 2.    Statement of the Facts

#### A. Johnathan Holt's Date of Birth.

Johnathan Holt is born April 10, 1992. (R.1343: Stipulations, Page
ID#14047; Presentence Investigation Report, Page 5)**.** He is approximately 13
years old at the time the Government asserts the alleged racketeering conspiracy
begins. (R.300: Superseding Indictment, Page ID# 1158).

#### B. The Short North Posse

The Short North Posse (hereinafter SNP) is a criminal enterprise operating in
or near Columbus, Ohio, from 2005 until 2014.  (R.300: Superseding Indictment,
Page ID# 1152)  The purposes of the enterprise, according to the United States,
include (1) using intimidation, threats, possession of weapons, assaults, attempted
murders and murders to promote, protect, and enhance the SNP's authority and
reputation; (2) to maintain control and protect its geographic territory through
intimidation, threats and violence; (3) to enrich its members and associates through
the commission of crimes involving the distribution of controlled substances,
robbery and murder for hire, burglary, theft and breaking and entering; (4)
protecting the enterprise and its members and associates from detection,
apprehension and prosecution by law enforcement; (5) enforcing its authority by

disciplining and punishing members and associates who did not comply with codes or rules, of by committing acts against other members, the enterprise and territory; and (6) retaliating with acts of violence and intimidation against non-members and rival gangs. (Id., Page ID# 1153-54).

Lance Reynolds is a member of the Short North Posse.  (R.1520: Transcript of Jury Trial Proceedings, Page ID# 15526). Reynolds also has a personal reputation for robbing people. (Id., Page ID# 15531).

### C. Relevant Stipulations

The parties stipulate "that the SNP … and their associates, as described in paragraphs 1 through 22 of Count One of the Superseding Indictment, is an enterprise as defined by 18 U.S.C.§ 1961(4)."  (R.1343: Stipulations, Page ID # 14046). It is also stipulated that Mr. Holt denies involvement in or with the enterprise and all other allegations contained in the Superseding Indictment. (Id).

An additional stipulation is that the "Government is not alleging that Johnathan Holt is a member of the Short North Posse." (Id.).

It also stipulated that Mr. Holt is shot multiple times in the back on July 30, 2010, and as a result, he is paralyzed from the chest down. (Id.).

 These stipulations are read to the jury by the district court when delivering its preliminary instructions at the outset of the trial. (R. 1518: Transcript of Jury Trial *Voir Dire* Proceedings, Page ID## 15315-316).

### D. The Murder of Quincy Battle

Quincy Battle is a drug dealer selling drugs from his home. (R.1520: Transcript of Jury Trial Proceedings, Page ID# 15435). He sells quantities of marijuana to an average of 20 customers per day. (Id., Page ID# 15510-512). William Moody lives with Mr. Battle in 2010. He performs errands for Mr. Battle, including answering the door of the residence when people come to buy drugs. (Id., Page ID# 15510-511). Mr. Moody is, at the time, a user of crack cocaine. (Id., Page ID# 15512).

On March 24, 2010, Moody answers the door at the Battle residence. A male, who is a repeat customer, is at the door, and hands him a $50 bill. Mr. Battle is at the rear of the home with his girlfriend. Moody takes the money to Mr. Battle, and Battle comes to the door to deliver the drugs. Moody hears some conversation, turns around, and sees Mr. Battle charging the man who is holding a gun. Moody hears two shots. (Id., Page ID# 15513). Mr. Moody does not see another person present. (Id., Page ID# 15514 and 15521).

Christopher Wharton, a co-defendant of Mr. Holt in Counts 19 and 20, is not charged as a member of the Short North Posse in Count One. He is, however, charged in other counts. (R.300: Superseding Indictment, Page ID# 1152). He is characterized by the United States as a young man who wants to make money, and,

like Mr. Holt, he is used by the much more experienced and older Lance Reynolds. (R.1519: Transcript of Jury Trial Proceedings, Page ID## 15333-34).

Wharton testifies that Lance Reynolds tells him where he can buy marijuana. (R.1520: Transcript of Jury Trial Proceedings, Page ID# 15546). Reynolds takes him to Battle's home, and Wharton purchases marijuana. (Id., Page ID## 15546-50). Later the same day, Wharton is asked to return to the Battle home. (Id., Page ID# 15551). Lance Reynolds instructs Wharton to go inside the residence, to see what is in there, and to come back out. (Id., Page ID# 15555).  Reynolds remains outside, and Mr. Holt and Roddriccos Kenney (Dreke) are instructed to enter later. (Id.). Wharton gives a $50 bill to Mr. Battle. (Id., Page ID# 15558). He testifies that Holt enters the home with a gun, that Battle jumps up, grabs Holt's wrist, and they wrestle for the gun near the front door. (Id., Page ID# 15559-560).  Wharton fires two shots from his .38 revolver. (Id.).  He runs, and hears more shots fired. (Id., Page ID# 15561). When asked why he fired his weapon, he states he thought Mr. Holt would be killed if he didn't shoot.  He says, "Johnathan was losing his gun to Quincy Battle, and Quincy Battle was going to end up getting Johnathan's gun and shooting him." (Id., Page ID# 15600).

Chief Medical Examiner Jan Gorniak testifies that Quincy Battle suffers from three gunshot wounds, and dies as a result of them. (R. 1521: Transcript of Jury Trial Proceedings, Page ID## 15629-632).

12

Detective William Gillette responds to the scene. (R.1521: Transcript of Jury Trial Proceedings, Page ID# 15634-635). He becomes the lead detective in the Battle murder investigation. (Id., Page ID# 15636). A .22 spent shell casing is located at the scene. (R.1520: Transcript of Jury Trial proceedings, Page ID# 15412). However, the investigation goes "stagnant by the summer months…." (Id., Page ID# 15640). Ultimately a weapon is recovered in an unrelated incident sometime in the fall of 2010. (R.1521: Transcript of Jury Trial Proceedings, Page ID# 15641). The weapon is traced back to Carl Nelson and the Battle murder. (Id., Page ID# 15642).

### E. The Interrogation of Johnathan Holt

#### 1. Subpoena

Mr. Holt is served with a Grand Jury Subpoena on August 26, 2014. (Id., Page ID# 15649). This is 4 years, 5 months and 2 days after Mr. Battle is killed. Mr. Holt is then 22 years old and, as stipulated, has been a paraplegic since July 30, 2010.

A cover letter accompanies the subpoena. There is the following exchange between counsel and Detective Gillette, during the suppression hearing:

> Q. In that cover letter, you indicate that you were
> requesting or compelling Mr. Holt's appearance at grand jury
> proceedings for handwriting examplars, fingerprints and
> photographs, correct?
> A. Either the grand jury or to meet with the agent to
> provide those, yes.

Q. And you did that in writing, correct?
A. Yes.

(R.1090: Transcript of Motion to Suppress Oral Statements Proceedings, Page ID#

8760). The subpoena does not indicate Mr. Holt will be interrogated.

## 2. Circumstances surrounding interrogation

A meeting takes place on August 28, 2014, pursuant to the subpoena, and

Mr. Holt is questioned on the fourth floor of the federal building.  (R.1521:

Transcript of Jury Trial Proceedings, Page ID# 15641). The following people, in

addition to Mr. Holt, are present: AUSA David DeVillers, Detective William

Gillette, Detective Mitch Seckman, FBI Agent Erick Lauber, and DEA Agent

Keith Leighton. (Id.).

The Government has a plan for the interview.  AUSA David DeVillers

describes the plan during his suppression hearing testimony:

> Plan A was to get the DNA and photographs and prints.
> Plan B was to get some sort of, perhaps, statement from him
> and inform him, quite frankly, of what he was facing.
>
> Our ultimate goal was … to get him to cooperate against the
> people that we believed were the organizers and supervisors
> of the Quincy Battle murder and other murders.

(R.1090: Transcript of Motion to Suppress Oral Statement Proceedings, Page ID#

8750).

Erick Lauber, an FBI special agent, later confirms at trial the purpose of the

meeting with Mr. Holt.  When asked about whether the Government anticipated

14

Mr. Holt making a voluntary statement, without the Government asking questions

or eliciting statements, there is the following exchange between Agent Lauber and

counsel:

> Q. But the preparation that was made to call three or
> or four other people, call Detective Gillette and say
> be here when he comes in to do this, and bring another
> CPD detective with you, that was not out of an expectation
> that he might volunteer to do it.  That was out of a plan to
> ask him and hopefully, he would do it correct?
> A. Yes.

(R.1521: Transcript of Jury Trial Proceedings, Page ID# 15810).

Mr. Holt, confined to his wheelchair, arrives at the federal building.

(R.1090: Transcript of Motion to Suppress Oral Statement Proceedings, Page ID#

8755).  He can self-propel in his wheelchair for limited distances, but is unable to

open doors alone. (Id., Page ID# 8792). Jemerrah Jones, his

girlfriend/caregiver/escort, brings him to the courthouse that day. (Id., Page ID#

8774-75).  They enter the main door of the courthouse, and go through security.

Two people are waiting for them. (Id.). One of them is Mitchell Seckman, a

detective with the Columbus Police Department. (Id., Page ID# 8794 and 8796).

According to Ms. Jones, Mr. Holt asks twice if he needs a lawyer, and is told they

just want to ask him a couple of questions.  Seckman does not recall Mr. Holt

asking if he needs an attorney. (Id., Page ID# 8797).  Seckman escorts Holt and

Ms. Jones to the fourth floor (Id., Page ID# 8798), and is present during the interrogation. (Id., Page ID# 8799).

The interrogation takes place inside an individual office, approximately 20 by 15 feet in size. It contains a table to accommodate those present. There is a door to Mr. Holt's left, about 10 feet from the door that exits the satellite office. (Id., Page ID# 8758).

Mr. Holt is questioned by law enforcement agents, and makes several admissions against his interests concerning the charges against him. (R.1521: Transcript of Jury Trial Proceedings, Page ID## 15652-657). The interrogation is not recorded, because the batteries in the detective's tape recorder are dead prior to the start of the interview. (Id., Page ID# 15650). Mr. Holt is in the interrogation room for about two hours. (R.1090: Transcript of Motion to Suppress Oral Statements Proceedings, Page ID# 8781).

A summary of the meeting is drafted by Detective Gillette about 15 days after it takes place. (R.1521: Transcript of Jury Trial Proceedings, Page ID# 15705). After the summary is completed and approved, he destroys his notes. (Id., Page ID# 15680). Detective Seckman describes the Gillette summary of the interview as a "general representation of what took place." (R. 1090: Transcript of Motion to Suppress Oral Statements Proceedings, Page ID# 8800).

## SUMMARY OF ARGUMENTS

Mr. Holt is sentenced to life imprisonment plus twenty-five years, to be served consecutively, for convictions arising from a superseding indictment charging murder in aid of racketeering and use of a firearm during and in relation to a drug trafficking crime.  There are two primary issues to be considered.

The district court's denial of Mr. Holt's motion to suppress unrecorded statements made by him during an interrogation conducted by the AUSA, local and federal law enforcement officers and agents is erroneous.  The pre-trial motion should have been granted as a matter of law, and the statements should not have been presented to the jury for consideration at trial.  The district court failed to fully consider the totality of the circumstances surrounding the interrogation when it concluded that the planned "interview" was non-custodial.  Mr. Holt submits that a reasonable person in his situation would not believe, as the interrogation continued, that he could leave despite assurances by the Government that he could do so.

The district court recognizes its decision on the suppression motion is a very close call.  Police agents charged with recording the interrogation violated their departmental policy when they failed to record it.  Prior to the interrogation, detectives discovered the recorder to be used had dead batteries.  Interrogation was held in the federal courthouse with multiple resources available, but through

neglect, laziness, or for purposes unknown, agents failed to delay the interview and replace the batteries. Due to inconsistencies in recounts of what was said, together with an incomplete summary prepared days after the meeting, a meaningful review of the circumstances is difficult.

There was insufficient evidence to support Mr. Holt's connection to the racketeering enterprise. Moreover, there is insufficient evidence that Mr. Holt committed murder in aid of racketeering based upon the two VICAR motivating factors charged in the indictment – to maintain or increase his position in the claimed "Short North Posse and associates" RICO enterprise, or that the murder was committed for any pecuniary motive tied to the charged enterprise. The district court states during trial that Mr. Holt's relationship is "somewhat attenuated" and, that, although the Government attempts to tie Mr. Holt to the charged conspiracy through Lance Reynolds, it is likely that Lance Reynolds was "freelancing." The motion for a directed verdict of acquittal should have been granted.

For these reasons, the conviction for murder in aid of racketeering should be set aside.

## ARGUMENTS

**I. WHETHER THE DISTRICT COURT ERRED WHEN IT CONCLUDED THAT THE INTERROGATION OF MR. HOLT WAS NON-CUSTODIAL, RESULTING IN ITS DENIAL OF HIS MOTION TO SUPPRESS STATEMENTS MADE TO LAW ENFORCEMENT AGENTS AND THE PROSECUTOR.**

### A.    Standard of Review

When reviewing a motion to suppress, the appeals court reviews the district court's findings of fact for clear error.  Legal decisions of the district court are reviewed *de novo. United States v. Williams,* 224 F.3d 530, 532 (6th Cir. 2000). The district court's factual findings are clearly erroneous only when the reviewing court "…is left with the definite and firm conviction that a mistake has been committed."  *United States v. Ray,* 803 F.3d 244, 265 (6th Cir. 2015).

The evidence is considered in the light most favorable to the Government in cases where the suppression motion has been denied. *United States v. Conder,* 529 Fed. Appx. 618, 620-21 (6th Cir. 2013).

Mixed questions of law and fact are presented when determining whether a defendant is in custody when interrogated.  Review in such cases is *de novo. United States v. Swanson,* 341 F.3d 524, 528 (6th Cir. 2003).

### B.    Argument

#### 1.  The law

The Fifth Amendment provides that no "person ... shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. *Miranda v. Arizona,* 384 U.S. 436, 475 (1966), holds that the Fifth Amendment grants suspects in custody a "… privilege against self-incrimination and [a] right to retained or appointed counsel."

The *Miranda* protections are required when a criminal defendant is subjected to custodial interrogation. *Id.,* at page 444. Thus, a defendant making a claim of *Miranda* violations must show that the statements were both made while in custody, and were made as the result of interrogation by law enforcement. The inquiry is objective. *Yarborough v. Alvarado,* 541 U.S. 652, 667 (2004).

> **2. Mr. Holt is in custody when his statements are given, and law enforcement is required to give him the full *Miranda* warnings prior to the planned interrogation.**

The district court erred when it determined that the August 28, 2014, interrogation of Mr. Holt was non-custodial. The analysis is multi-faceted.

Mr. Holt concedes that he was not formally "under arrest" at the time of this interrogation. However, under the totality of the circumstances, and despite law enforcement's assurances to the contrary, Mr. Holt's freedom of movement was restrained to the degree that a reasonable person would "…have felt he…was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane,* 516 U.S. 99, 112 (1995). Moreover, there "…was a restraint on [his] freedom of movement

of the degree associated with formal arrest." *United States v. Panak,* 552 F.3d 462, 465 (6th Cir. 2009).

The Sixth Circuit provides guidance for courts addressing custodial interrogations in *United States v. Hinojosa,* 606 F.3d 875 (6th Cir. 2010). The Court points to several factors to be considered when determining whether a defendant is in custody for *Miranda* purposes. The Court explains:

> We consider several factors when determining whether an interrogation was of a custodial nature, including (1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions.

*Id.,* at 883. These factors, together with other factual circumstances present in this case, indicate that the interrogation of Mr. Holt was custodial.

### a) The Location.

Law enforcement agents interrogate Mr. Holt within the federal courthouse when he responds to the subpoena. He passes through security to gain entrance to the building, is met by a detective on the first floor, and is escorted to an internal and secure office on the fourth floor. The agents separate him from his girlfriend/caregiver. The interrogation is controlled by law enforcement agents and an assistant United States Attorney, who question Mr. Holt in accordance with a pre-devised plan and goal.

The environment is "coercive," as evidenced by the nature of the interrogation. Mr. Holt is a paralyzed individual confined to a wheelchair. The room in which the interview takes place is not large. He is surrounded by law enforcement agents and prosecutors who are conferring with one another during the questioning. The Sixth Circuit recognizes that "a station house or security room … can be inherently intimidating…." *United States v. Salvo,* 133 F.3d 943, 951 (6th Cir. 1998). Unlike Salvo, Mr. Holt is in a confined space, chosen by law enforcement agents, under circumstances which would cause any reasonable person in a similar situation to feel constrained and intimidated.

Mr. Holt is not arguing that the location of the interrogation, standing alone, is determinative of the issue. The district court's reliance on *California v. Beheler,* 463 U.S. 1121, 1125 (1983)(questioning at police station), *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977)(questioning at police station), and *Mason v. Mitchell,*320 F.3d 604, 631-32 (6th Cir. 2003)(Interview at sheriff's office) is misplaced. The court determines that the setting of Mr. Holt's interrogation is no more coercive than presented by the facts of those cases. A proper examination of the issue must include not only the specific physical location of the interrogation, but the environment and atmosphere in which the interrogation takes place are part of the location that must also be considered.

**b) The Length and Manner of Questioning.**

Mr. Holt is in the interrogation room for about two hours. (R.1090: Transcript of Motion to Suppress Oral Statements Proceedings, Page ID# 8781). The circumstances surrounding the interrogation of Mr. Holt are again distinguishable from the facts of cases relied upon by the district court.

First, Mr. Holt is not interrogated at his home or workplace. The district court cites *Conder,* 529 Fed. Appx. at 623, as supportive of its conclusion that the Holt interrogation was non-custodial. However, the facts of *Conder* are very dissimilar to those of the instant case. During Conder's encounter with law enforcement, he was asked only five questions by the police prior to making incriminating statements. Unlike Mr. Holt, Conder was not questioned by multiple agents and officers. Moreover, the interview of Conder was in his home, and he had granted the agents permission to enter it, demonstrating Conder had some control over the encounter which was inconsistent with him being in custody.

Likewise, the facts of *United States v. Mahan,* 190 F.3d 416, 420-22 (6th Cir. 1999), are inapposite to those in Mr. Holt's case. Law enforcement agents interviewed Mahan at his workplace. The interview room was accessible to co-employees, who, in fact, interrupted the interview necessitating that Mahan and the agents go to another room. There are no facts indicating that there was any restraint on Mahan's freedom. *Id.* However, in Mr. Holt's case, the facts show that

only agents, the AUSA and Mr. Holt are in the room, and there is no indication

other people have access to it during the interrogation.

There are additional distinctions.  The agents in Mr. Holt's case were in

control of the environment, and, unlike Conder, Holt was certainly exposed to

lengthy and probing questioning, as evidenced by the testimony.  As an example,

on direct examination, when describing Mr. Holt's interrogation, Detective Gillette

recites the following:

> … it was a difficult interview because he kind of
> changed versions three different times during the
> interview. He kind of gave one version at first and
> then, *when we asked him a few more questions,* he kind
> of gave another version. Then, *when we pressed him a
> little bit more,* he finally gave a third version.  It was
> kind of a tough interview.

(R.1521: Transcript of Jury Trial Proceedings, Page ID# 15652).   Later, Gillette,

when describing Holt's versions of events, states, "*When we pressed a little bit

further*, the third version of events…." was given. (Id., Page ID# 15656.)

Additionally, multiple persons present in the room are asking questions of

Mr. Holt. Detective Seckman and defense counsel have the following exchange:

> Q. Detective with regard to sequence of events, Mr.
>    Holt was first interviewed by someone in the room,
>    correct?
> A. Yes.
> Q. And do you remember who conducted that interview?
> A. I believe that Mr. DeVillers was the primary person
>    asking the questions.
> Q. But everyone else participated somewhat?

A. Yes.

(R.1090: Transcript of Motion to Suppress Oral Statements Proceedings, Page ID# 8801).

This manner of pressing for answers when questioning Mr. Holt, if reviewed objectively, is indicative of a custodial interrogation.

### c) Restraint on Individual's Freedom of Movement.

The district court is correct when concluding that the number of agents present during the interrogation, standing alone, does not trigger *Miranda's* requirements. *Conder,* 529 Fed. Appx. at 623. Also, there is no evidence of record that Mr. Holt was physically restrained by handcuffs or otherwise. However, when examining the totality of the circumstances, a factor to be considered, but left unaddressed by the district court, is whether governmental agents placed Mr. Holt in a situation where his movement and ability to leave were restricted. Confined to a wheelchair and unable to push or wheel himself and open doors, Mr. Holt was in a situation created by law enforcement, where he faced "….additional pressures to detain him." See *Cervantes v. Walker,* 589 F.2d 424, 428 (9th Cir. 1978). Put another way from an objective point of view, a reasonable person would have believed under these circumstances that there had been restrictions on Mr. Holt's freedom of movement.

The officers' were certainly not blind to Mr. Holt's physical condition and confinement. They had separated him from his caregiver/escort. There is no evidence of suggested breaks, nor did anyone present ensure that Mr. Holt's special needs evident by his physical condition were met.  In this atypical situation, Mr. Holt's movement was restricted in a situation he did not create.

### d) Whether law enforcements' advice to Holt that he could leave at any time was meaningful under the circumstances.

The district court relies heavily on the fact that the agents repeatedly informed Mr. Holt that he was not under arrest and could leave at any time, that he was free to move about during the interview, and that he was warned that he need not answer any questions and should get an attorney.  The Sixth Circuit holds that statements by law enforcement officials that a person is not under arrest (*Swanson,* 341 F.3d, at 350) and that he is free to go at any time (*United States v. Protsman,* 74 Fed. Appx. 529, 534-36 (6th Cir. 2003)) are important factors to show a defendant is not in custody.  However, the advice, if given, is but one factor to be considered and, under these facts, is not dispositive of the issue.  The warnings must be considered in context of the entire interrogation, and, when considering this component of the analysis, the statements made by various officers and agents must be closely examined because there is conflicting testimony.

The district court first acknowledges that its initial denial of Mr. Holt's motion to suppress is based upon Mr. DeVillers' testimony at the suppression hearing. (R.1521: Transcript of Jury Trial Proceedings, Page ID# 15701). The court then states that when hearing Gillette's trial testimony, "…it seemed inconsistent with what Mr. DeVillers told me." (Id.).

AUSA DeVillers feels a need to make a record. He states, "I agree there's some inconsistency with what Detective Gillette is saying. But I stick by everything I said at the suppression hearing…." (Id., Page ID# 15703).

The District Court then offers an additional explanation as to why it made additional inquiry into the suppression issue. It states

> And I'm going to tell you, my decision rested on Mr. DeVillers' testimony. That's why, when I got some information that was inconsistent, I wanted to clarify it in and for the record.

(Id., Page ID# 15703).

There are many critical discrepancies regarding the sequence of events that should be considered when reviewing the totality of the circumstances.

The agents and the AUSA begin to question Mr. Holt only two or three minutes after his arrival according to the AUSA. (R.1090: Transcript of Motion to Suppress Oral Statements Proceedings, Page ID# 8755).

The law provides that the "…only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation…." *Stansbury v.*

*California,* 511 U.S. 318, 323 (1994). However, comments by AUSA DeVillers are pertinent, yet the impact of the testimony regarding the statements is overlooked by the district court. For example, at the suppression hearing, AUSA DeVillers testifies that:

> I told him that the only thing he's required to do is the photograph and a DNA. I told him that he's free to leave after doing that, that I'm going to – he may – I may ask him some questions. If he wants to answer them, he can. He doesn't have to. He can leave anytime he wants. He has a right to an attorney. He has the right to remain silent, and he can't be compelled to say anything. And I wanted to make sure he knew that and realized that he didn't have to stay.

(Id., Page ID# 8751). He further states that the interrogation of Mr. Holt, in his opinion, was non-custodial. He also explains:

> ...in the sense of specifically because he was the target in the investigation. And that is policy when anyone is subpoenaed for even when it's a grand jury subpoena, even when it's not to testify, they were still compelled to show up or compelled to give the photograph or DNA. So I told him that that's what he has to do, but I wanted to be clear that he didn't have to do anything else.

(Id., Page ID# 8764). Other officers and agents present at the interview have only general recollections of what Mr. Holt was told, and Gillette's interview summary is incomplete. The expressions of AUSA DeVillers that Holt was the target of an investigation and could remain silent, together with the almost immediate commencement of questioning were enough to affect a reasonable person's perception of his freedom under the entire circumstances. *Stansbury,* 511 U.S. at 325.

28

DeVillers further testifies he later tells Mr. Holt to leave and get an attorney. (Id., Page ID# 8765). However, the warnings that he should leave and get an attorney are not included or reflected in the summary of the interview prepared by Detective Gillette. (R.612-1: Informational Summary #1616, Page ID## 2568-575).

Later, at the suppression hearing, Mr. DeVillers, as a witness, has the following exchange when questioned by defense counsel:

> Q. Now, earlier on direct examination you used the term that you *Mirandized* him. But now you're indicating that it wasn't *Miranda*?
> A. I didn't read a *Miranda* warning. I didn't have it with me. I just go over the gist of what's in *Miranda,* and additional *Miranda* because he's free to leave at any time….
> Q. Would Mr. Holt have been able to leave prior to giving a DNA and being photographed and things that were called for in the subpoena?
> A. We wouldn't have stopped him from leaving. I think we would have told the Court that he left without allowing those, but we wouldn't have stopped him.
> Q. And were you present for the time when Mr. Holt was told that if he didn't, a warrant would be issued and that that was requested would be received in that way?
> A. Yes.

(R.1090: Transcript of Motion to Suppress Oral Statements Proceedings, Page ID# 8767). Under the circumstances objectively viewed, a reasonable person not familiar with legal jargon or procedures could very easily interpret the threat of an arrest warrant as an order to stay and comply with the requests of the Government.

Detective Seckman of the Columbus Division of Police also testifies, and his testimony is slightly different. He is present for the entire questioning of Mr. Holt. (Id., Page ID# 8799). He recalls that Mr. Holt was told he could leave *after* Agent Lauber took his photograph. (Id.). He does not recall that Mr. Holt was *Mirandized* or advised of his rights. (Id.). He further testifies that Mr. DeVillers, not Detective Gillette, was the primary person questioning Mr. Holt. (Id., Page ID# 8801). He relates that Mr. Holt never expressed being uncomfortable at any time during the questioning. (Id., Page ID# 8804).

William Gillette also testifies at the suppression hearing, and recites yet another timeline for the sequence of events. He recalls that the DNA sample and photograph were not taken initially, but were taken sometime *during* the interrogation. (Id., Page ID# 8811). He does not recall when Mr. Holt was told or advised that he should leave and get an attorney. (Id., Page ID# 8814). Gillette recites that Mr. Holt never gave any indications he was uncomfortable during the interrogation. (Id., Page ID# 8818).

Detective Gillette, characterized as "a very critical witness for the government," (R.1521: Transcript of Jury Trial Proceedings, Page ID# 15659), also testifies during the trial, and this testimony conflicts with that previously given.

This time, Gillette testifies that Mr. Holt was advised of his rights. (Id., Page ID# 15683). According to Gillette, Holt was told he was free to go and could leave at any time. (Id.). He also testifies that he, not Mr. DeVillers, was the primary questioner of Mr. Holt, and Mr. DeVillers only asked some questions. (Id., Page ID# 15659).  He states that Mr. DeVillers warned Mr. Holt "…at the end, towards the end" of the questioning. (Id., Page ID# 15693).  He does not recall anyone telling Mr. Holt to get an attorney after his first, second or third inconsistent statements. (Id., Page ID# 15694). Moreover, such warnings are not reflected in his summary of the interrogation. (Id., Page ID# 15695). He relates that Mr. Holt was not told what he said could be used against him. (Id.).

Gillette next confirms that after Mr. DeVillers and Agent Lauber confer outside of the interrogation room and then return, they express their concern about the truthfulness of the statements Mr. Holt is giving (Id., Page ID# 15696-697).

Agent Lauber testifies that, at this point on the date of the interrogation, another AUSA (Mr. Kelley) enters the room once or twice. (Id, Page ID# 15804). Agent Lauber, contrary to Gillette's testimony, further testifies that Mr. DeVillers "more or less" tells Holt to get an attorney.  There is then the following exchange with defense counsel:

> Q. And they didn't go back over any of the things
>    that he was advised before he began, in terms of his
>    ability to leave or not talk or anything like that, correct?
> A. No, he did not.

31

(Id., Page ID# 15697).  The agents then ask Mr. Holt additional questions. (Id.,

Page ID## 15696-697).

The demeanor of Mr. Holt during the interview is also the subject of

conflicting testimony. Despite the previous testimony that the agents never

witnessed Mr. Holt display signs of uncomfortableness, both Detective Gillette and

Agent Lauber describe Mr. Holt's unusual reactions to this latest round of

questioning. The following exchange is between AUSA Kelley and Detective

Gillette:

> Q. At some point did Mr. Holt act in a way differently than he
> had previously?
> A. At some point when I believe Mr. DeVillers asked him,
> hey, we need to know what really happened, he took his
> shirt and pulled it up over his head and then put his hands
> like this. And then once he pulled his shirt back down, he
> said okay, I'll tell you what really happened.

(Id., Page ID# 15660). AUSA DeVillers and Agent Lauber also discuss this

incident on direct examination. Lauber relates even more detail.

> Q. This incident where he puts the shirt over his head,
> about how long was that when that – did that take?
> A. I mean, it was visible. He was kind of sitting there rocking
> with the shirt over his head. Probably it was seconds rather
> than – but it seemed like a long time because, in this
> business, it doesn't happen that often that you see an
> individual that gets emotional and at least told us that: I'm
> going to tell you what really happened.

(Id., Page ID# 15804-805).

32

Questioning of Mr. Holt is proceeding and intensifying, and he displays obvious signs of being overcome by the pressures being imposed upon him. A reasonable person, under these circumstances, would not believe that he or she had the option to terminate the session and leave. The advice that he could do so, if given, is meaningless under the circumstances, as law enforcement, according to the Government's pre-developed plan, presses for his confession.

> ### 3. The statements were taken contrary to the policies of the Columbus Police Department requiring recordation of this interrogation. Affirming this conviction under these facts will create a dangerous precedent.
>
> #### a) Preface

On May 12, 2014, Deputy Attorney General James M. Cole issues a "Policy Concerning Electronic Recording of Statements" to, among others, all United States Attorneys, FBI agents, DEA agents and others. The policy establishes a presumption that statements made by persons in United States custody be recorded. Although non-custodial interviews are excluded, the policy "… encourages agents and prosecutors to consider electronic recording in investigative or other circumstances where the presumption does not apply." (R.612-2: Policy, Exhibit B to Motion to Suppress, Page ID# 2576-77).

The federal government defers to William Gillette of the Columbus Police Department (CPD) as to how the August 28, 2014, interview of Mr. Holt will be recorded. It is DOJ policy to only record custodial interviews by audio or

videotape. (R.1090: Transcript of Motion to Suppress Oral Statement Proceedings, Page ID# 8757). The United States opts not to record this interview. However, Gillette is tasked with recording or memorializing it. (Id.).

Gillette confirms at the suppression hearing that it is the policy and protocol of the Columbus Police Department to record interviews unless another agency prohibits such recordings. (Id., Page ID# 8812).

### b) Contrary to Columbus Police Department policy, the interview of Mr. Holt is not recorded because Detective Gillette's recorder has dead batteries.

At trial, on direct examination, Detective Gillette explains:

> We're supposed to tape record every interview that we do. It's our policy. On this day, when I hit the tape recorder, it beeped. And what that means is my batteries are dead. It's something that happened. I didn't mean for it to happen…. And at that point, I knew that I wasn't going to get any recording. So I had to rely on taking good notes during the interview.

(R.1521: Transcript of Jury Trial Proceedings, Page ID# 15650-651 and 15677).

Detective Gillette has a recording device with him at the time of this interview. However, when he "… pushed the button to record, it beeped twice meaning my battery was dead. So I did not record this interview." (R.1090: Transcript of Motion to Suppress Oral Statements Proceedings, Page ID# 8812). The failure to record becomes an issue at trial.

Recall that the interview takes place in the federal building where there are multiple resources available. The District Court questions Detective Gillette:

Q. Did anybody consider delaying the interview until you
   went and got batteries?
A. No, we did not.
Q. Did anybody ask to go and get batteries?
A. No, sir….

Q. Now, do you have a protocol that you typically follow when
   you're interviewing potential witnesses?
A. Yes, sir.
Q. Is part of that protocol when you're taking statements to record
   it, the statement?
A. Yes, sir.
Q. Are you required to adhere to your protocol?
A. I do as much as I can, sir. This time, the batteries went dead - -
Q. The battery was dead before you started the interview. So it
   didn't go dead in the middle of the interview, did it?
A. No, it was dead when I hit the button.
Q. Yes. And at the time that you did this, you were interviewing Mr.
   Holt, it was your belief that Mr. Holt may be implicated in a
   murder, is that right?
A. Correct, yes.
Q. So this wasn't just an interview with a casual witness, Correct?
A. Correct.

(Id., Page ID## 15677-679).

Following up on the court's questions, Defense counsel points out that Mr.

Holt is the only person of significance for which there is no tape recording of the

statement made. (Id., Page ID# 15681).

The District Court is very concerned that Gillette did not follow the CPD

protocol, and recalls that the denial of the motion to suppress was "a very close

case." (Id., Page ID# 15684). The Court recognizes that Gillette has an obligation

to record, everyone knew Mr. Holt was a suspect, and "…it became apparent to

everybody that we're getting a confession here. And just record the confession. It's

not hard." (Id., Page ID# 15686).

The court recesses. (Id., Page ID# 15688). After reconvening outside the

presence of the jury, the Court hears further argument and testimony regarding the

renewed motion to suppress. (Id., Page ID## 15689-697). The Court then

reaffirms its decision that there was no custodial interrogation and the suppression

motion is again denied. (Id., Page ID#15697-698). However, the Court explains:

> But it comes perilously close to amounting to a
> constitutional violation. I'll put it to you like this,
> Government – and I had the same – had this been
> essentially the same as it was when I considered this,
> I don't know whether the outcome would have been the same.

(Id. Page ID# 15697-698). Thus, the United States appears to be given the

proverbial "second bite at the apple." The Court goes on to say that Mr. Holt

should have been *Mirandized.* (Id., Page ID# 15698). The Court hints that future

cases before it with similar facts might be resolved differently. (Id., Page

ID#15700). Although the court reaffirms its conclusion that there was no custodial

interrogation and the statements will not be suppressed, it addresses the

Government:

> But you're hanging on by the skinniest of threads. I
> want you to know that. I don't want to see that case again
> in my court. If you don't have batteries, get them. If you
> don't get the batteries and you violate your own internal
> policies, you may do so at your own peril. Because I sit *nisi
> prius* which means the trial court. So I'm going to frame the

issue for the court of appeals. And all of these other trial courts who come out differently, well, they just come out differently.

(Id., Page ID# 15700).

The Government should have faced the same peril in Mr. Holt's case. The lack of a recording, as required by the CPD, certainly works against Mr. Holt's basic rights to fundamental fairness. A recording would have contained significant objective evidence bearing on the total circumstances surrounding this interview, the accuracy of what was said, filled in the gaps that exist in the Gillette summary, and resolved the discrepancies in the testimony. Only with that complete information could the district court make a meaningful determination of the custodial nature of this interrogation. Without such, Mr. Holt should have been given the benefit that the district court forecasts will be given in future similar cases.

### c) The district court recognizes that the failure to record the interview in this case creates a dangerous precedent.

The District Court says it best in response to arguments by the Government that there was no requirement for the federal agents to record the interview. The Court states:

> It bothers me to no end that he (Gillette) violated their own protocol… They did not violate federal protocol. But you didn't have a federal agent in there. He (Gillette) interviewed him. Now, he interviewed him, didn't abide by his own – didn't abide by his own protocol. When you

37

> take it another step, here is where the problem gets exacerbated….
>
> But now there's precedent for having a defendant who is maybe under the concurrent jurisdiction of both state and federal, but he comes into federal custody first. Let say it's a joint state federal task force, federal and state officers bring him in. Now, if the state guy is supposed to record it but they know that they're going to get a confession and they don't want to record this stuff, then they can let the federal guy interview him where there is no requirement to record it, even though if the state guy interviewed him, he would have to record it because of their protocol.

(Id., Page ID# 15684-685).

Such a manipulation occurred in Mr. Holt's case. The state detective certainly had the obligation to record and did not follow his own protocol. The interview was in the federal building, the agent could have obtained batteries or borrowed another recording device. As the District Court states, "It's almost like they didn't want it recorded, because there was something improper about it." Due process requires more.

Once more, conflicts in the testimony concerning the warnings and advice given to Mr. Holt, the timing of when those were given, and the circumstances surrounding his right and ability to leave at any time could have been properly resolved had the persons conducting the interrogation recorded it.

### 4. Mr. Holt's statements are in response to law enforcement's interrogation of him.

The second component to be considered is whether Mr. Holt's statements

resulted from interrogation by the Government.  A review of the record, as explained above, leaves little doubt that that the Government planned to question Mr. Holt.  Questioning was the goal of the "interview." See Brief, at page 14. Witnesses for the Government admit that Mr. Holt was pressed for answers, and that he was questioned by multiple agents and the AUSA.  See Brief, at page 24. Thus, the questions by law enforcement were "reasonably likely to elicit an incriminating response" from Mr. Holt. See *Rhode Island v. Innis,* 446 U.S. 291, 300 (1980).  It would be disingenuous for the Government to portray Mr. Holt's statements as voluntary and not as the product of Government interrogation.

### C.    Conclusion

The District Court erred when it found the interrogation of Mr. Holt non-custodial. It also erred when it failed to suppress the statements made by Mr. Holt in circumstances allowing the Government to manipulate the interrogation in such a way as to preclude the existence of a true record of the interview upon which the facts of that interview can be reviewed.  For these reasons, the statements should be suppressed and the conviction reversed and remanded for new proceedings.

## II.    WHETHER THE CONVICTION OF JOHNATHAN HOLT IS SUPPORTED BY SUFFICIENT EVIDENCE TO PROVE A CRIME OF VIOLENCE IN AID OF RACKETEERING.

### A.    Standard of Review

The Court of Appeals reviews a sufficiency of the evidence claim *de novo.* *United States v. Taylor,* 800 F.3d 701, 711 (6th Cir. 2015).

Federal Rule of Criminal Procedure 29(a) provides that, "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."

In *Jackson v. Virginia,* 443 U.S. 307, 319 (1979), the Supreme Court held that when reviewing such claims, evidence is reviewed in a light most favorable to the prosecution. The question becomes whether "…any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

The Sixth Circuit holds that these standards place a heavy burden upon defendants who raise sufficiency of the evidence claims. *United States v. Geisen,* 612 F.3d 471, 489 (6th Cir. 2010).  It is not proper for the court to weigh the evidence, consider witness credibility, or substitute its judgment for that of the jury. *United States v. Graham,* 622 F.3d 445, 448 (6th Cir. 2010).

## B.    Introduction to Argument

The question in this case is not whether state offenses were perpetrated. The issue is whether there was sufficient evidence to convince a rational jury that Mr. Holt committed federal racketeering crimes.  Mr. Holt challenges the sufficiency of the evidence presented that he was an "associate" of the Short North Posse, and

that the murder of Quincy Battle was committed in aid of racketeering.  But for the erroneous admission of Mr. Holt's statements, there is a lack of sufficient evidence to support his conviction.

### C.   Argument

#### 1.  The Law

Murder in aid of racketeering, 18 U.S.C. § 1959(a)(1) requires that the Government prove five elements. (1) the existence of an enterprise; (2) the enterprise engaging in, or its activities affecting, interstate or foreign commerce; (3) the enterprise engaging in racketeering activities; (4) the defendant committing an act of violence; and (5) the crime of violence being committed as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the enterprise, or for the purpose of gaining entrance to or maintaining or increasing position in the enterprise. See *United States v. Concepcion,* 983 F.2d 369, 392 (2d Cir. 1992).

If a conspiracy exists, a defendant's connection to it "need only be slight." *United States v. Avery,* 128 F.3d 966, 971 (6th Cir. 1997). A defendant's knowledge and participation in a conspiracy may be inferred from his conduct and may be established by circumstantial evidence. *United States v. Salgado,* 250 F.3d 438,447 (6th Cir. 2001). However, mere association with members of a conspiracy

is not enough to support such an inference. *United States v. Pearce,* 912 F.2d 159, 162 (6th Cir. 1990).

### 2. There is insufficient evidence to show that Mr. Holt was an associate or member of any racketeering enterprise.

The parties stipulate that the Short North Posse and its associates are an enterprise as defined by 18 U.S.C § 1961(4). Mr. Holt denies involvement with the enterprise, and the United States does not allege that he is a member of the Short North Posse. (R. 1343: Stipulations, Page ID# 14046).

"The existence of a (racketeering) enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other'." *Boyle v. United States,* 556 U.S. 938, 947 (2009), restating its holding in *United States v. Turkette,* 452 U.S. 576, 583 (1981).

The Government's theory of the case includes the position that the charged racketeering enterprise is the Short North Posse and its associates. The enterprise is charged as an association-in-fact, (R.300: Superseding Indictment, Page ID# 1153), and as such it must have structure, longevity sufficient for its members to pursue the enterprise's purpose, and its members must function as a continuing unit to achieve its common purpose. *Boyle,* 556 U.S. at 946.

It is the burden of the Government to show that members of the enterprise and the associates conduct, participate or conspire to conduct or participate in

conducting the affairs of the enterprise through a pattern of racketeering activity.
See *Salinas v. United States,* 522 U.S. 52, 62-63 (1997).

The district court recognizes and states that the Government's evidence
linking Mr. Holt to any enterprise is weak. Mr. Holt submits that the evidence is so
weak at the close of the Government's case that his motion for a judgment of
acquittal should have been granted on the charge of murder in aid of racketeering.

The United States attempts to "connect" Mr. Holt to the enterprise and
racketeering acts through the trial testimony of Christopher Wharton and Ishmael
Bowers, co-defendants who are not charged as members of the racketeering
conspiracy.

Christopher Wharton identifies Lance Reynolds as a member of the Short
North Posse. (R.1520: Transcript of Jury Trial proceedings, Page ID# 15526). He
testifies that Reynolds is going to rob a Check into Cash store, and that Reynolds
wants to involve Mr. Holt. (Id., Page ID# 15527). However, Reynolds, Andre
Brown (Paco), and Hector (last name unknown) actually commit this robbery.
Wharton does not offer any evidence that Holt participates, but says that Holt
receives $300, maybe for having his car available. Holt's car is not used in the
robbery.  (Id., Page ID# 15530). There is no evidence that Holt took part in
planning the robbery, or did anything to facilitate it.  Importantly, there is no
evidence that the robbery was to further goals of the racketeering enterprise, or that

the money was paid to him, if it was paid, or received by Mr. Holt, from the charged enterprise.

Wharton wants to meet Reynolds because he wants some money (Id.), and everyone knows Reynolds robs people (Id., Page ID# 15531).  According to Wharton, Reynolds contacts him and Mr. Holt. Together, a marijuana house is robbed after Wharton and Holt force the owner back into his own home.  The characteristics of this robbery do not fit the MO of robberies performed on behalf of the enterprise because guns are not brandished and there are no injuries to the victim. (Id., Page ID## 15533-538). Although marijuana is taken, there is no evidence that the proceeds are divided, or that Mr. Holt receives anything from the charged enterprise of pecuniary value for his part in the robbery, even if he in fact participated in it. (Id., Page ID## 15538-540).  However, there is testimony that Mr. Wharton and Mr. Reynolds together hit a lot of weed houses after this incident, but Mr. Holt does not participate in them. (Id., Page ID## 15540-541).

Mr. Wharton also describes the Family Dollar Store robbery.  He says the participants are Mr. Holt, Lance Reynolds and himself.  Other than Reynolds, there are no other members of the Short North Posse present. (Id., Page ID# 15541-545). This robbery is described by eyewitnesses Savannah Ficks (Id., Page ID## 15365-375), and Megan Howard (Id., Page ID## 15375-386).  Direct testimony concerning this robbery does not connect it with the charged enterprise.  There is

no evidence of payment to or receipt by Mr. Holt from the charged enterprise. There is no evidence of a plan that the enterprise would pay Mr. Holt had any proceeds been received by it.

Lance Reynolds, Mr. Wharton, Mr. Holt and Roddriccos Kenney are, according to Mr. Wharton's testimony, present at or near the Quincy Battle residence when Mr. Battle is shot during his attempts to take a weapon from Mr. Holt. (Id, Page ID# 15552). There is no evidence that Wharton, Holt or Keeney are members of the Short North Posse.  Although present with Mr. Reynolds at his request, there is no evidence the robbery Reynolds planned was on behalf of the charged enterprise – the Short North Posse and its associates.

Ishmael Bowers testifies for the Government, and makes an effort to tie Mr. Holt to the charged enterprise by describing a murder in Zanesville, Ohio.  Bowers admits that he does things with the Short North Posse, but he is not a member of it. The participants in that murder are himself, and Short North Posse members Lance Reynolds, Andre Brown, and Joseph Hill. (R.1521: Transcript of Jury Trial Proceedings, Page ID## 15759-761). Bowers admits that he commits multiple crimes with Mr. Reynolds. (Id., Page ID 15761). Bowers does not meet Mr. Holt until sometime in 2009 after the Zanesville murder. (Id., Page ID# 15763). Bowers describes Holt as knowing a lot of people, and there was no particular reason he met Mr. Holt. (Id.). Although characteristic of acts performed by the Short North

Posse, this evidence is not relevant, much less determinative that Mr. Holt is an associate of the charged enterprise.

Bowers describes a robbery of someone called Vale from the SNP. He says the participants are himself, Wharton and Holt. (Id., Page ID# 15764). This is not a robbery of a grow house as was the MO of the charged enterprise. This was a break-in of a home, from which four ounces of cocaine were taken. (Id. Page ID## 15764-765). Like acts described in the testimony of Mr. Wharton, no other members of the SNP were present. Although the proceeds are divided, there is no direct or other evidence that Holt receives anything from the enterprise. (Id., Page ID# 15765).

Multiple people are described by Bowers as participating in a burglary in New Albany. They drive to the premises of a person named Brent in their own cars. Marijuana, TVs, video games, and other items are taken. The participants "grabbed what they wanted to grab and left." (Id., Page ID## 15767-768).  What is described is a kind of a free-for-all, and there is no evidence the proceeds were divided as any part of a plan or scheme on behalf of the described enterprise.

Brent is robbed by Reynolds, Bowers and allegedly Holt on a different occasion. No other members of the SNP are present. Unlike the MO of the charged enterprise, cash, a scarf and sunglasses are the items taken. (Id., Page ID# 15768). Bowers testifies that he never sees Holt with bags full of weed as described by Mr.

Wharton, and does recall situations where Holt and Reynolds rob grow houses.

(Id., Page ID# 15769). Bowers does not participate in the Battle homicide. (Id.,

Page ID# 15772).

When responding to the argument of defense counsel's Rule 29 motion, the

Government responds as follow:

> Your honor, the enterprise is defined by the Short North Posse
> and its associates. It's also defined and stipulated to – it's defined
> by what it does. It is defined by its actions and its shtick, if you will.
> and its shtick is robbing drug houses.

(R.1523: Transcript of Jury Trial Proceedings, Page ID##15897-898). The AUSA

then redefines the enterprise, making the broad statement that "Mr. Reynolds is the

Short North Posse or is the enterprise." (Id. Page ID# 15898). When the district

court asks if Reynolds is an agent of the enterprise, the Government responds that

Reynolds "…is the enterprise, and so is Mr. Brown and so is Mr. Bowers." (Id,

Page ID# 15899).

The district court recognizes and states that the Government's evidence

linking Mr. Holt to any enterprise is weak. Mr. Holt submits that the evidence is so

weak at the close of the Government's case that his motion for a judgment of

acquittal should have been granted on the charge of murder in aid of racketeering.

The district court, when ultimately deciding that Mr. Holt's trial

should be severed from that of co-defendant DeShawn Smith, states:

> And while Smith and Holt bear some relation to the Short North
> Posse (the racketeering enterprise at the heart of this case),
> Holt's relationship is somewhat attenuated. Holt does not, for
> example, stand accused of racketeering conspiracy…. Instead,
> Holt stands accused of murder in aid of racketeering, among
> other crimes.

(R.1281: Order, Page ID# 13761).   Later, during the charging conference, and

only one witness prior to the close of the Government's case, when describing Mr.

Holt's relationship to the Short North Posse which was at the heart of the case, the

Court further states:

> …they (referring to Holt) weren't trying to get in the
> posse….They were just trying to make some money, and
> these were the guys who were doing it.… -- the evidence really
> sounds like Lance Reynolds had him a side hustle. He was kind
> of his own subset….He was just Lance Reynolds freelancing.

(R.1522: Transcript of Charging Conference, Page ID## 15834-835).

The evidence shows that Lance Reynolds was both a member of the Short

North Posse and a freelancer.  When acting apart from the SNP and to accomplish

different objectives, he called upon Mr. Holt, Mr. Wharton and Mr. Bowers to take

the dangerous steps to accomplish his individual goals.  There is no testimony that

the fruits of the crimes would be divided or distributed in accordance with the

objectives of the charged enterprise. In fact, there is no evidence that Mr. Holt had

any "deal" with any enterprise. Nor is there evidence that Mr. Reynolds, in his

relationship with Mr. Holt, was acting as an agent for the SNP and/or associates of

the SNP. Finally, there was no evidence of any longevity of the Reynolds/Holt

relationship to permit Mr. Holt to pursue the purposes of the enterprise as initially defined by the Government. See *Boyle*, 556 U.S. at 946.

3. **There is insufficient evidence to prove that the Quincy Battle murder was committed in furtherance of any racketeering enterprise**.

The Government's proof is insufficient to establish acts by Mr. Holt to elevate his conduct from ordinary conspiracy crimes to acts in aid of racketeering. The Government's proof fails on two fronts: (1) there is insufficient evidence that Mr. Holt committed murder as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from a racketeering enterprise or the Short North Posse, and (2) there is insufficient proof that the Battle murder was committed for the purpose of gaining entrance to and maintaining and increasing position in the Short North Posse or an enterprise engaged in racketeering activity.

a) **There is no proof that the Battle murder was committed because Mr. Holt was attempting to gain entrance into, or maintain or increase his position in the Short North Posse or any racketeering enterprise.**

The Violent Crimes in Aid of Racketeering Act (VICAR) does not extend "…to any violent behavior by a gang member under the presumption that such individuals are always motivated, at least in part, by their desire to maintain their

status within the gang…." *United States v. Hackett,* 762 F.3d 493, 500 (6th Cir. 2014), quoting *United States v. Banks,* 514 F.3d 959, 968 (9th Cir. 2008).  The Sixth Circuit holds that VICAR's "purpose" element is only met if a jury could find an "animating purpose" of the defendant's actions. *Id.*

One motivating factor relied upon by the Government was that Holt committed violent acts, including the murder of Quincy Battle, to gain entrance into the "Short North Posse and associates" enterprise, or to maintain or increase his position therein.  There is no such evidence. As previously stated, it was stipulated that Holt was not a member of the SNP. Thus, axiomatically, he could not maintain or increase his position in that group. Moreover, there is no evidence that he was attempting to gain entrance into the SNP.  As for the "SNP and associates" enterprise, there is no evidence that Holt was a member of its hierarchy and would lose any position within the group, or that he was expected to perform in accordance with any code, rules or in accordance with any expectations for his behavior.

> **b) There is insufficient proof to show that the Battle murder was committed because Mr. Holt was promised payment, expected to pay or received anything of pecuniary value from any racketeering enterprise or from the Short North Posse.**

*United States v. Morrison,* 220 F.Appx. 389, 395 (6th Cir. 2007) holds that "… conjecture and surmise regarding what a defendant may have intended or

known is insufficient to support a conviction."  Although legitimate inferences are within a jury's province, those inferences must be based on facts presented at trial. *United States v. Tocco,* 200 F.3d 401, 424 (6th Cir. 2000).  As set forth in the arguments above, the Government did not present sufficient factual evidence from which the jury could infer that his acts were to receive payment from the Short North Posse or from the charged enterprise.

To sustain a RICO conviction, predicate racketeering acts must be related to the illegal purposes of an enterprise. Thus, the Government must show the defendant was "enabled to commit the offense solely by virtue of his position in the enterprise; or the offense was related to the activities of the enterprise." *United States v. Corrado,* 227 F.3d 543, 554 (6th Cir. 2000).   There was no such showing in this trial to support Mr. Holt's conviction for the murder of Mr. Battle in aid of racketeering.  There is no evidence of any agreement between Mr. Holt and the charged enterprise that he was to receive anything of pecuniary value from the Battle robbery, or from the homicide that resulted.

**D. Conclusion**

A rational trier of fact could not have concluded, from the evidence presented, that the necessary elements of the VICAR convictions were established. When reviewing the facts properly admitted at trial, there is "…no principled basis for distinguishing between violence … within the ambit of VICAR and violence

that is not within its reach." See *United States v. Jones,* 291 F. Supp. 2d 78, 89 (D

CT, 2003). Proof of the motivating prongs – positional enhancement or pecuniary

value – is insufficient. The Rule 29 motion should have been granted.

## **CONCLUSION**

Based upon the foregoing arguments and law cited, Johnathan Holt requests

that his conviction be reversed and the judgment vacated.

Respectfully Submitted,

*s/ Steven R. Jaeger*
STEVEN R. JAEGER
The Jaeger Firm PLLC
23 Erlanger Road
Erlanger, Kentucky 41018
(859) 342-4500
srjaeger@thejaegerfirm.com

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the Federal Rule of Appellate Procedure 32(a)(7)(B)(i).  The brief was prepared in Microsoft Word, using Times New Roman 14-point font. According to the word count function, the word count, including footnotes is 11,832.

*s/ Steven R. Jaeger*
STEVEN R. JAEGER
Counsel for Defendant-Appellant

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties of record.

*s/ Steven R. Jaeger*
STEVEN R. JAEGER
Attorney for Defendant-Appellant

CASE NO.  17-3111

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA              PLAINTIFF-APPELLEE

VS.

JOHNATHAN HOLT                        DEFENDANT-APPELLANT

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION
CASE NO. 2:14-cr-00127-19

---

APPELLANT'S DESIGNATION OF RELEVANT
DISTRICT COURT DOCUMENTS

---

Johnathan Holt, pursuant to Sixth Circuit Rule 30(b), hereby designates the following relevant district court documents.  For each document, the record entry number from the district court docket and a description of the document are included.

| Description of Entry | Record Entry No. | Page ID# |
|---|---|---|
| Presentence Investigation Report | | |
| Indictment | 14 | 104-183 |

A

| | | |
|---|---|---|
| Superseding Indictment | 300 | 1150-1243 |
| Motion to Dismiss Indictment | 435 | 1723-1727 |
| Motion for Severance and Relief from Prejudicial Joinder | 436 | 1728-1731 |
| Response to Motion for Severance | 468 | 1816-1821 |
| Response to Motion to Dismiss Indictment | 472 | 1835-1840 |
| Order | 595 | 2470-2474 |
| Motion to Suppress Oral Statements | 612 | 2564-2567 |
| Informational Summary #1616 | 612-1 | 2568-2575 |
| Policy, Exhibit B to Motion to Suppress | 612-2 | 2576-2579 |
| U.S. Opposition to Holt's Motion to Suppress Oral Statements | 646 | 2775-2783 |
| Opinion and Order | 682 | 3034-3056 |
| Opinion and Order | 727 | 3337-3367 |
| Opinion and Order | 775 | 3575-3590 |
| Transcript of Motion to Suppress Oral Statement Proceedings | 1090 | 8731-8822 |
| Government's Motions for Severance | 1272 | 13742-13744 |
| Defendant's Response to Government's Motion to Sever | 1275 | 13749-13750 |
| Order | 1281 | 13760-13762 |

| | | |
|---|---|---|
| | 1324 | 13966-13967 |
| Order | 1328 | 13974-13975 |
| Stipulations | 1343 | 14046-14048 |
| Verdict Forms | 1347 | 14092-14093 |
| Judgment in a Criminal Case | 1413 | 14397-14402 |
| Notice of Appeal | 1417 | 14433-14434 |
| Sealed: Transcript of Jury Trial *Voir Dire* Proceedings | 1516 | 15031-15248 |
| Transcript of Jury Trial *Voir Dire* Proceedings | 1518 | 15257-15328 |
| Transcript of Jury Trial Proceedings | 1519 | 15329-15362 |
| Transcript of Jury Trial Proceedings | 1520 | 15363-15612 |
| Transcript of Jury Trial Proceedings | 1521 | 15613-15822 |
| Transcript of Charging Conference | 1522 | 15823-15856 |
| Transcript of Jury Trial Proceedings | 1523 | 15857-16047 |
| Transcript of Jury Trial proceedings | 1525 | 16239-16263 |
| Transcript of Sentencing Proceedings | 1526 | 16264-16284 |

Respectfully Submitted,

s/ *Steven R. Jaeger*
STEVEN R. JAEGER (KBA 35451)
THE JAEGER FIRM PLLC
23 Erlanger Road

c

Erlanger, Kentucky 41018
TELE: (859) 342-4500
EMAIL: srjaeger@thejaegerfirm.com

*Counsel for Defendant - Appellant*